IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-02630-MSK-STV

JANET L. WALCOTT,

   Plaintiff,

v.

UNITED STATES OF AMERICA,

   Defendant.

---

**OPINION AND ORDER SUSTAINING OBJECTIONS IN PART AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to Ms. Walcott's Objections **(# 51)** to the Magistrate Judge's Recommendation **(# 47)** that the Government's Motion to Dismiss **(# 38)** be granted, and the Government's response **(# 52)**.

## FACTS

According to the Amended Complaint **(# 5)**, Ms. Walcott receives monthly pension payments from her former employer. Beginning in 2013, the Internal Revenue Service ("IRS") issued a levy[1] against those pension payments, directing that 100% of each monthly payment be paid over to the IRS instead of Ms. Walcott. Ms. Walcott contends that the IRS never issued any Notice of Deficiency that would support such collection efforts, never gave her notice and an opportunity to be heard on the levy, nor complied with statutory prerequisites to the issuance of a levy.

---

[1]   The record subsequently revealed that the IRS imposed two separate levies, one in 2012 and one in 2014. Except in the limited circumstances where it is necessary to distinguish between them, the Court will often refer to them as a singular levy as Ms. Walcott has.

1

Her *pro se*[2] Amended Complaint contains three claims: (i) a request for an injunction halting the current levy and "barring defendant from any further levy activity for its unstated claims," pursuant to 26 U.S.C. § 6213(a), plus an apparent claim for a refund of the levied monies under the same provision; (ii) a claim for damages pursuant to 26 U.S.C. § 7433, in that the IRS negligently disregarded the provisions of the Internal Revenue Code in issuing the levy; and (iii) a request for return of the full amount -- $ 95,000 – collected pursuant to the levy because such funds are "surplus proceeds" as defined by 26 U.S.C. § 6342.

The Government moved to dismiss **(# 38)** Ms. Walcott's claims pursuant to Fed. R. Civ. P. 12(b)(1). It argued that: (i) as to her request for an injunction, the request was moot because the IRS had released all of its levies against her pension payments, she did not show that the claim fell within a recognized exception to the Anti-Injunction act, 26 U.S.C. § 7421(a), and she was precluded from challenging at least one of the levies in question due to *res judicata* effects from a prior challenge she brought; (ii) as to her claim for a refund of "surplus proceeds" the IRS collected, she has not shown a waiver of the Government's sovereign immunity for such a claim, nor shown that she exhausted her administrative remedies by filing a claim with the appropriate IRS District Director; and (iii) as to her claim for negligence, she failed to adequately exhaust her administrative remedies.

The Court referred the Government's motion to the Magistrate Judge for a Recommendation. On March 31, 2017, the Magistrate Judge recommended **(# 47)** that the Government's motion be granted. Specifically, the Magistrate Judge found: (i) her request for injunctive relief was rendered moot when the IRS released the levy in March 2016; (ii) Ms. Walcott's argument that the request was not moot because the IRS released the levy voluntarily

---

[2] Because of Ms. Walcott's *pro se* status, the Court liberally construes her pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

2

and could thus resume it at any time was without merit, insofar as the IRS represented by affidavit that there are no collection hearings pending for any levies against Ms. Walcott; (iii) to the extent her request for injunctive relief also includes a request for a refund under 26 U.S.C. § 6213(a), she failed to avail herself of the two alternatives for challenging a tax deficiency – either paying the tax, seeking a refund from the IRS, and litigating the denial of that refund, or by filing a timely petition in Tax Court; (iv) as to her second and third claims, she failed to exhaust her administrative remedies by first filing a request with the Administrative Director for the region in which she resides, 26 C.F.R. § 301.7433-1(e)(1) and 26 C.F.R. § 301-6342-1(b); and (v) Ms. Walcott's argument that she filed her request with the IRS at its address in Washington D.C. because the IRS had not published its Denver, Colorado address in the Federal Register was without merit because she had actual notice of the Denver address pursuant to IRS publication 4235.

Ms. Walcott timely filed Objections **(# 51)** to the Recommendation. She contends: (i) the IRS' affidavit as to the absence of any existing collection hearings is not enough to render her request for an injunction moot because there is no necessary connection between such hearings and the IRS resuming the levy and because the IRS clearly released the levy only as a direct response to the pendency of her lawsuit; (ii) the Magistrate Judge erred in considering her request for a refund under 26 U.S.C. § 7422, instead of considering it under 26 U.S.C. § 6213(a), rendering the latter statute meaningless; (iii) the Magistrate Judge erred in excusing the IRS' failure to publish the address of its Denver location in the Federal Register as required by 5 U.S.C. § 552, and erred in finding that the IRS' publication of the address in a general pamphlet was sufficient to confer actual notice of the address upon her when "direct notice" to her of the address is required.

3

## ANALYSIS

The Court reviews the objected-to portions of a Recommendation *de novo*. Fed. R. Civ. P. 72(b).

**A. Mootness**

Ms. Walcott's primary objection to the Magistrate Judge's finding that the matter was moot is that the IRS could resume the levy at any time. As the Magistrate Judge noted, the Government, as the party asserting mootness, carries a "formidable" burden (also described as "heavy" and "stringent") "of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Brown v. Buhman*, 822 F.3d 1151, 1166-67 (10th Cir. 2016). However, *Brown* recognizes that "the burden is not insurmountable, especially in the context of government enforcement," and that cases in which the Government's voluntary cessation of a challenged practice has been found to <u>not</u> moot the case have been cases involving "clear showings of reluctant submission by governmental actors and a desire to return to the old ways." *Id.* at 1167. Thus, in the context of government enforcement efforts, the 10th Circuit generally finds that "absent evidence that the voluntary cessation is a sham," the government need not show that it is "physical[ly] or logical[ly] impossibl[e] that the challenged policy will be reenacted"; it need only show that the cessation of the challenged practice is "genuine." *Id.*

Here, the Government submitted the affidavit of Roseanne Miller, an IRS Revenue Officer. Ms. Miller notes that Ms. Walcott continues to have tax deficiencies (or, did as of 2013), but states that "there is no collection due-process hearing pending for the levy at issue in this lawsuit or for any other collection action by the IRS at this time." That assertion requires some parsing. The reference to a "collection due-process hearing" refers to the hearing contemplated by 26 U.S.C. § 6330(a)(1). *See Keller Tank Services II, Inc. v. Commissioner of*

*Internal Revenue*, 854 F.3d 1178, 1188 (10th Cir. 2017). That statute provides that "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made." The hearing is an "opportunity [for the taxpayer] to contest the lien or levy before the IRS proceeded with collection." *Keller*, *id.* However, a hearing only occurs if the taxpayer makes a timely request for one. 26 U.S.C. § 6330(b)(1). The ability of the taxpayer to request a hearing is triggered by the IRS giving notice of the intended levy, and the request must be made within the 30-day period before the levy takes effect. 26 U.S.C. § 6330(a)(3)(B). If no hearing is timely requested, the IRS may proceed on the levy.

Ms. Miller states that no such hearing is "pending for the levy at issue in this lawsuit" – that is, the levy against Ms. Walcott's pension. That assertion is largely self-evident: the levy in question was imposed in October 2014, and Ms. Miller's affidavit was signed in March 2016. By operation of § 6330(a)(3)(B), Ms. Walcott's ability to request a hearing with regard to that levy expired by October 2014, when the levy took effect. Thus, the fact that no hearing is pending for that levy does little to guard against the concern Ms. Walcott has that the IRS will simply reinstate the October 2014 levy (or impose a new levy, again without notifying Ms. Walcott as required by § 6330). The second portion of Ms. Miller's statement seems to piggyback on the first: there "is no collection due-process hearing pending . . . for any other collection action by the IRS at this time." Once again, the statement's focus on the pendency of a "hearing" tends to obscure, rather than clarify, Ms. Miller's meaning. Taken at face value, it simply means that Ms. Walcott has not requested a hearing in response to receiving a Notice of Intended Levy. It does not mean that the IRS does not intend to proceed to impose another levy to collect Ms. Walcott's remaining unpaid taxes.

That being said, there is no reason why the IRS should <u>not</u> be permitted to continue its efforts to collect any alleged unpaid taxes, whether by levy or otherwise. The Court understands the thrust of Ms. Walcott's Amended Complaint to be that the IRS imposed a levy without first giving her the notice and opportunity to be heard contemplated by § 3660. Were the IRS to decide to impose yet another levy, first ensuring that Ms. Walcott received the notice required by statute (and affording her the appropriate hearing, if she requested), there is no reason why the IRS should not be allowed to proceed in that manner.

After careful consideration, this Court finds that the record warrants a conclusion that, to the extent the October 2014 levy was improperly imposed, it was done so through oversight, rather than purposefully, and that the IRS is genuine in its intentions to comply with the pre-levy notice requirements in the future. The Court reaches that conclusion based on Ms. Miller's affidavit, which indicates that the IRS <u>did</u> send Ms. Walcott some pre-levy notices relating to certain tax years. The Court also notes (without necessarily considering) Ms. Walcott's reply brief in support of her request for a preliminary injunction, which appears to concede that the IRS <u>did</u> notify her of an intent to collect approximately $68,000 in unpaid taxes via the levy. *See* Docket # 20. As the Court understands it, then, Ms. Walcott's claims are not that the IRS imposed the October 2014 levy without any notice to her whatsoever. Rather, her complaint is that the IRS gave notice to her that it would collect a certain amount by levy, that it collected the announced sum, and that it <u>continued</u> to collect additional, un-noticed amounts thereafter. Viewed in this light, Ms. Miller's affidavit seems to concede that are situations in which IRS records reflect that a notice of levy was sent to Ms. Walcott at her address of record, but that the IRS is unable to "locate a copy" of those documents. Thus, it appears to the Court that the levy collections Ms. Walcott complains of were not purposeful efforts by the IRS to evade the law's

6

notice requirements – that is, the type of conduct that could an injunction can effectively remedy – but rather, were the result of bureaucratic oversight or paperwork errors – that is, a type of unintentional carelessness that an injunction is unlikely to prevent. Moreover, the Court is confident that Ms. Walcott's tenacity in this litigation will further ensure that the IRS will be certain to scrupulously observe all procedural requirements in its future collection efforts against her.

Under these circumstances, the Court sees no reason to question the "genuineness" of the IRS' withdrawal of the instant levy, and believes that Ms. Walcott's concerns that the IRS might resume the unlawful collection of a levy without the statutorily-required notice are unlikely to be realized. Thus, the Court agrees with the Magistrate Judge that Ms. Walcott's request for an injunction may be dismissed as moot.

### B. 26 U.S.C. § 6213

The Magistrate Judge understood Ms. Walcott's request for injunctive relief to also contain a request for a refund pursuant to 26 U.S.C. § 6213(a). That statute provides that "within [a specific period] after the notice of deficiency . . . is mailed, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency." The statute goes on to prohibit a "levy or proceeding in court for its collection . . . until the expiration of [that time period or conclusion of the Tax Court proceedings]." If the IRS engages in an assessment or levy during prior to the expiration of that period, "a refund may be ordered by [the] court of any amount collected within the period during which the Secretary is prohibited from collecting by levy."

Taking Ms. Walcott's allegations in her Amended Complaint as true, the Court will assume that the IRS' levy against her pension benefits occurred without any notice of deficiency

7

having been mailed to her, and thus, the levy was imposed before the period set forth in 26 U.S.C. § 6213(a) expired.

The Magistrate Judge found that, to the extent Ms. Walcott intended to seek a refund of the levied funds, she had two options. First, she could file a refund suit by following the procedures of 26 U.S.C. § 7422. It is clear from Ms. Walcott's pleadings that she is not attempting to invoke the refund procedures of § 7422, and thus, the Court will not dwell on that section further. Second, to invoke the refund remedy contemplated by § 6213(a), she had to file a petition in the Tax Court, and, it is undisputed, she has not done so.

This Court disagrees with the Magistrate Judge's conclusion that a suit for a refund as contemplated by § 6213(a) must necessarily be brought in the Tax Court. Section 6213(a) can be parsed as follows. The first sentence of that section sets forth a deadline, measured from the Notice of Deficiency, by which the taxpayer must "file a petition in the Tax Court for a redetermination of the deficiency." *Id.* The second sentence of the section prohibits the IRS from undertaking collection activities, including a levy, until the deadline established by the first section has passed. *Id.* The third sentence provides the relief the taxpayer may obtain if the prohibition in the second sentence is violated: the levy or other collection effort "may be enjoined by a proceeding <u>in the proper court, including the Tax Court</u>, and a refund may be ordered by such court of any amount collected." *Id.* (emphasis added). If Congress intended that a suit for an injunction and/or refund under § 6213(a) could only be maintained in the Tax Court, the third sentence's reference to "the proper court, including the Tax Court" would be redundant. It is clear that although the Tax Court is the sole venue in which a taxpayer can request a redetermination of a deficiency under the first sentence of § 6213(a), the statute permits the taxpayer to enjoin improper levies and seek a refund of improperly levied funds from <u>any</u>

8

"proper court" capable of granting such relief. The Court does not understand the Government to argue that the District Courts lack jurisdiction to entertain suits for injunctions or refunds under § 6213(a). Thus, the Court disagrees with the Magistrate Judge's conclusion that Ms. Walcott cannot maintain a suit for a refund under § 6213(a) in this Court.

The Government's response to Ms. Walcott's Objections on the refund claim is somewhat different. It argues that the refund remedy contemplated by § 6213(a) is necessarily an adjunct to a remedy in the form of an injunction against a levy, and that the Court cannot deny injunctive relief yet still award a refund under that section. The Court need not extensively address the Government's first, textual argument in support of this contention: it argues that "Congress intended the . . . refund authority to be used during a proceeding for injunctive relief." But here, Ms. Walcott did indeed request both injunctive relief and a refund in the same proceeding, only to be stymied on the former request by the IRS' own actions in releasing the levy. Nothing in the Government's textual argument suggests that a colorable claim for injunctive relief, mooted by subsequent IRS action, somehow deprives the Court of the ability to nevertheless impose a remedy of refund.

The Government's second argument is that allowing a taxpayer to sue for a refund under section 6213(a) would "upend the current refund scheme" reflected in 26 U.S.C. § 7422. It goes on to argue that nothing in the legislative history of § 6213(a) suggests that Congress intended such a result. This Court rejects that argument. The language of § 6213(a) is unambiguous: a taxpayer aggrieved by collection activities that occur before the date specified in that section may sue for both prospective relief to halt such efforts (via an injunction) and to recover the funds that had already been collected unlawfully (via a refund). Where a statute's language is clear, legislative history cannot be used to alter it. *U.S. v. Woods*, 134 S.Ct. 557, 567 n. 5 (2013).

9

Thus, the Court agrees with Ms. Walcott that, on its face, § 6213(a) contemplates a proceeding by which a taxpayer can seek a refund of funds that were collected by a levy in violation of that section's terms, even if the IRS has successfully mooted any companion claim for prospective injunctive relief. Because the Court understands Ms. Walcott's Amended Complaint to allege that the IRS' levy violated § 6213(a), she may maintain an action for a refund under that section. Whether or not that allegation has merit is a question for another day. Accordingly, the Court sustains Ms. Walcott's Objections on this point and denies the Government's motion to dismiss her refund claim under § 6213(a).

### C. Exhaustion

As to Ms. Walcott's remaining claims – for damages under 26 U.S.C. § 7433 and for a refund of the levied money as surplus proceeds under 26 U.S.C. § 6342 – the Magistrate Judge found that both claims have, as a precondition to suit, a requirement that Ms. Walcott exhaust her administrative remedies. Specifically, the Magistrate Judge found that, for her § 7433 claim, she was required to serve a written claim on the "Area Director . . . of the area in which [she] currently resides." 26 C.F.R. § 301.7433-1(e)(1). As to her claim under § 6342, she was required to make an application for the surplus funds upon "the district director." 26 C.F.R. § 301.6342-1(b). Ms. Walcott does not argue that the Magistrate Judge erred in construing the statutory or regulatory scheme in this manner, and the Court adopts that portion of the Recommendation.

It is undisputed that Ms. Walcott made claims under both statutes in December 2015 by mailing a letter to the Commissioner of Internal Revenue in Washington, D.C. The Government argues, and the Magistrate Judge found, that sending a claim to the IRS' Washington, D.C. address did not satisfy the exhaustion requirements of making claims upon an Area Director or

district director. Ms. Walcott does not specifically challenge this finding, and thus, this Court adopts it.

Ms. Walcott argues that she sent her claim to the IRS in Washington, D.C., rather than to a more local office, because the IRS failed to publish the addresses of its local offices in the Federal Register as required by 5 U.S.C. § 552(a)(1)(A). That statute provides that "Each agency shall . . . publish in the Federal Register for the guidance of the public descriptions of its central and field organization and the established places at which . . . the public may obtain information, make submittals or requests, or obtain decisions." It further states that "a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register" if the agency has not actually published the information in question, but that a party with "actual and timely notice of the terms" that should have been published may not rely on non-publication as a defense. *Id.*

The Court need not delve into the fascinating question of whether the IRS has adequately discharged its statutory obligations pursuant to 5 U.S.C. § 552(a)(1)(A), as the Court agrees with the Magistrate Judge that, even if the IRS has not, Ms. Walcott had actual notice of the proper address for filing administrative claims under 26 U.S.C. § 7433. The Magistrate Judge took judicial notice of the fact that Ms. Walcott was the plaintiff in a similar case in this Court, styled *Walcott v. United States*, D.C. Colo. Civ. Case No. 14-cv-01758-REB-KMT. Her Complaint in that action included, as an exhibit, a July 27, 2013 letter she sent to the IRS' Denver office, asserting a claim under § 7433. This adequately demonstrates that, as of that date, Ms. Walcott had actual knowledge of the Denver office, including its address, and believed that it was the appropriate place to send an administrative claim pursuant to § 7433. As set forth in 5 U.S.C. §

552(a), this actual knowledge ameliorates any deficiency in the IRS' compliance with that statute's publication requirement.

Ms. Walcott argues, in a two-sentence footnote in her Objections, that such correspondence was "ad hoc" and should not be considered by the Court on the instant motion because it was not included in her current Complaint. The Court rejects both arguments. Whether the July 2013 correspondence was "ad hoc" or part of a more systemic exchange is immaterial; the only question is whether Ms. Walcott actually believed that her demand under section 7433 should be directed to the Denver IRS office, and the letter unambiguously demonstrates that fact. As to her argument that the July 2013 letter lies outside the record before this Court on the present motion, the argument is misplaced for two reasons. First, the Court notes that the IRS' motion challenging the sufficiency of Ms. Walcott's administrative exhaustion raises questions of this Court's subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See e.g. Bowers v. J&M Discount Towing, LLC*, 472 F.Supp.2d 1248, 1271 (D.N.M. 2006). On a motion pursuant to Rule 12(b)(1), the Court is permitted to look outside the allegations of the Complaint and consider extraneous materials. *See Zinke v. Slater*, 34 Fed.Appx. 667, 672 n. 5 (10th Cir. 2002), *citing Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987). Second, even if the Court were constrained to the face of Ms. Walcott's pleadings, as it would be on a motion under Rule 12(b)(6), it may consider facts outside the Complaint that are nevertheless the proper subject of judicial notice under Fed. R. Evid. 201. *See Hodgson v. Farmington City*, 675 Fed.Appx. 838, 840-41 (10th Cir. 2017). Both the existence and addressing of Ms. Walcott's July 2013 record can be readily determined from review of the Court's electronic docket records, a source whose accuracy cannot reasonably be questioned, making it an appropriate subject for judicial notice. *See id.* (court properly

considered its own "publicly filed records concerning matters that bear directly upon the disposition of the case at hand" when considering a motion to dismiss).

Accordingly, the Court finds that Ms. Walcott had actual notice of the location of the IRS' Denver office, such that the IRS' failure to publish that address pursuant to 5 U.S.C. § 552 does not relieve Ms. Walcott of the obligation to administratively exhaust her remaining claims. The Court grants the Government's motion to dismiss those claims as unexhausted.

## CONCLUSION

For the foregoing reasons, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Ms. Walcott's Objections **(# 51)**, **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Recommendation **(# 47)**, and **GRANTS IN PART** and **DENIES IN PART** the Government's Motion to Dismiss **(# 38)**. The Court dismisses Ms. Walcott's first claim under 26 U.S.C. § 6213 the extent it seeks prospective injunctive relief, and her second and third claims for relief brought under 26 U.S.C. § 7433 and 26 U.S.C. § 6342, but declines to dismiss Ms. Walcott's claim for a refund of the levied funds pursuant to 26 U.S.C. § 6213.

Dated this 7th day of July, 2017.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge